## FORTUNE v. BRAZIER.

1. It is not competent for parties, by articles of agreement between themselves to invest such person as a majority of them shall afterwards appoint with power to sue in his own name for monies agreed to be contributed by each partner to the general fund.

Writ of Error to the Circuit Court of Lowndes.

ACTION on the case by Fortune against Brazier. The plaintiff alledges in his declaration, that J. A. Tarver, Fortune & Withers, John Dunn, H. R. Nixon, James Brazier, J.

L. Rochelle, Nath'l Bozeman, B. J. B. Lathrop, J. R. Gilbert, Hearn & Whitman, C. Toliver, The. Sayre, H. P. Perry, H. V. Wooton, H. V. Smith, James M. Gunn and James H. Rochelle, were partners in a line of stages, and for the purpose of establishing said line of stages, subscribed from one to five shares each, at $100 per share, one half to be paid for on the first January, 1839, the other half on the 1st January, 1840. By the articles of co-partnership, the partners contracted and agreed, by and between themselves, each to pay the sums subscribed to some certain person therefor to be appointed by the partners, or a majority of them, and by them authorized to receive the same, and in case of their failure to pay, then the said partners, by the said articles of agreement and partnership, gave to the said person so appointed authority to sue for and recover the amount of the said shares so subscribed. Under these articles, Brazier was appointed to collect and sue for the sums due. The partnership, on the 1st May, 1841, was indebted to Fortune in the sum of $928, and the defendant, Brazier, in consideration of this indebtedness, authorized · and employed Fortune to sue in his (Brazier's) name for the sums due from the several partners. Under this power and authority, Fortune commenced suits in the name of Brazier, against nine of the delinquent partners, when Brazier, maliciously intending, &c. to injure the plaintiff, caused the said suits to be dismissed, and refused to permit the plaintiff to use his name in said suits, as he had previously agreed, whereby the said plaintiff wholly lost the means to rocover the said debt, and was put to great cost and expense, &c.

At the trial, the plaintiff produced and read the articles of partnership, which is substantially as set out in the declaration; the clauses bearing upon the questions raised are as follows, viz :

" And each doth bind himself to the others, to pay to some person to be appointed by the said shareholders, or a majority of them."

" And in case of failure so to pay, do give the said person so appointed, authority to sue for and recover the same as aforesaid."

" And we do hereby covenant and agree, with each other, that so soon as, &c. they, or a majority of them would ap-

point some certain person to collect the amounts subscribed, with authority in his own name to sue for and recover the sums so subscribed."

He also proved that Brazier was the person appointed under these clauses. of the articles of partnership, and that he executed a certificate to the plaintiff in these terms, viz:

"I certify that the amount now due J. A. Fortune, by the stockholders of the Selma and Montgomery stage line, on the 1st day of May, 1841, is $928 16. Selma, 27th April, 1841.

J. BRAZIER."

" The said Fortune has power to collect the above amount from the stockholders. 27th April, 1841. J. BRAZIER,

*Agent for collecting from original subscription.*

The plaintiff also proved the commencement of the suits in the name of Brazier, and that the latter caused them to be dismissed, against the consent of the plaintiff.

It was also in evidence, that after the commencement of the suits by Fortune, in the name of Brazier, an order was made by the circuit court in which they were pending, at the instance of Brazier, that Fortune should give security for the costs within four months, or the suits to be dismissed. It was shown the security was not given within that time, but at the succeeding term of the court, before the suits were dismissed, Fortune offered in open court, to indemnify Brazier against the costs, by executing to him a bond with sufficient sureties for that purpose, which Brazier refused. It was also proved, that Brazier then had in his hands between $400 and $500 of Fortune's money.

On this state of proof the court charged the jury, the plaintiff was not entitled to recover, because the suits commenced by Fortune, in the name of Brazier, could not have been maintained by Brazier.

The court further charged, that the orders for the dismissal of the suits, was a protection to Brazier against a recovery in this suit ; that however it might be as a question of morals, there was no legal liability resulting from the dismissal of the suits by Brazier.

These charges are now assigned as error.

100

G. W. GAYLE, for the plaintiff in error, made the following points:

1. Case is the proper remedy for an injury of this nature. [2 Step. N. P. 1010; Smith v. Goodwin, 2 B. & A. 420; 1 Chitty Pl. 136; 3 Wils. 349.]

2. The suits dismissed could have been maintained in the name of Brazier. [Nance v. Grigsby's Ex'rs, 3 Ala. Rep. 347.]

3. The order dismissing these suits is no protection to the defendant here, it being shown the act was against the right of the plaintiff and *maliciously* procured to be done by the defendant.

T. WILLIAMS, contra.

GOLDTHWAITE, J.—When the agreement between the partners in running the stage line is looked to, there is no question of the intention of the different partners to give their consent, that suits should be instituted against each of them, in case of default, in the name of such person as the partners should afterwards designate for that purpose. This cause now turns on the point whether or not this intention can be carried into effect. It is a general rule, the action for the breach of a contract, must be brought in the name of the person having the legal interest in it. [Chitty's Pl. 2.] And though some seeming exceptions exist, yet the rule has been held to extend so far as to prevent a suit in the name of the actual treasurer of commissioners, or the agent of an association, when the written contracts indicated such officer as the payee, without the insertion of his individual name. [Piggott v. Thompson, 3 B. & P. 85; Gilmore v. Pope, 5 Mass. 491.] With us, the doctrine of these adjudications has been fully recognized and carried out. Thus in Ewing v. Medlock, 1 Porter, 82, the note was payable to the treasurer of a voluntary association, and this court considered the action was improperly brought by the person who at the date of the contract filled that office. To the same effect is Alston v. Hartman, 2 Al. Rep. 699, where the note was payable to the treasurer of a corporation. In these cases, although the promise was express to pay to the particular officer, yet the ef-

fest of this was held to be a promise which invested the association in the one instance, and the corporation in the other, with the right of action. There is a class of cases where the promise was made to the agent by *name*, as well as description of office, in which the courts have considered the agents as invested with the legal interest in the contract, and have held the suits sustainable in their names. Such are the cases of Bumpass v. Richardson, 1 Stewart, 16, and Grigsby v. Nance, 3 Ala. Rep. 347, and many other cases of a like nature are to be found in the books. [Buffon v. Chadwick, 8 Mass. 103 ; Binney v. Plumley, 3 Verm. 500.] The reason which governs this class of cases is, that the parties by the act performed, have actually vested the legal interest to the debt in the person to whom the promise is made in writing, although in point of fact he is the mere trustee of others. In this particular it is that the present case differs from the class of decisions just referred to, as there is nothing more than the agreement to pay such a trustee when he shall afterwards be named ; the express promise to pay to him is entirely wanting, and the agreement that he may sue, is made with other persons than himself. To permit effect to be given to a contract of this nature, would lead in a great degree to the abrogation of the rule, that suits must be in the name of those having the legal interest in the contract, and parties would frequently be substituted, without the slightest responsibility being imposed by the litigation, on those possessing the actual and equitable interest. We have met with no case in which it said, that parties, by contract between themselves, may determine that suits in regard to it shall be brought in the names of other persons, having either no interest, or but a partial one in the subject matter, and we hence conclude that such a contract is inoperative, unless accompanied by some further action.

Conceding the utmost extent which can be claimed for the power said to be given by the defendant to the plaintiff, to sue on the contract made between the partners, it cannot, we think, be intended the plaintiff was thereby invested with the authority to commence suits which, in law, he would not be able to sustain. When therefore, it is shown that no suit upon the contract could be maintained by the defendant, it

follows that no injury could result to the plaintiff from its dismissal. Independent of the motives influencing the conduct of the defendant in dismissing the suits instituted in his name, by the plaintiff, if the act did not, nor could, legally prejudice the latter, there is no ground on which the present action is sustainable.

This is the conclusion of our minds, and as this disposes of the cause, it is unimportant to examine the other questions presented.

Judgment affirmed.